**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **LEOPOLD WILLIAMS, as personal representative of the ESTATE OF WILLIAMS,** | ) ) ) |
| | ) **Case No. 1:11-cv-0025** |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **COST-U-LESS, INC.** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**Attorneys:**

LEE J. ROHN, ESQ.
MARY FAITH CARPENTER, ESQ.
RHEA LAWRENCE, ESQ.
LEE J. ROHN & ASSOCIATES
ST. CROIX, U.S.V.I.
  *FOR PLAINTIFF LEOPOLD WILLIAMS*

KYLE R. WALDNER, ESQ.
WALDNER LAW, P.C.
ST. THOMAS, U.S.V.I.

HENRY C. SMOCK, ESQ.
SMOCK LAW, P.C.
ST. THOMAS, U.S.V.I.

RYAN C. MEADE, ESQ.
QUINTAIRO, PRIETO, WOOD & BOYER, P.A.
MIAMI, FL
  *FOR DEFENDANT COST-U-LESS, INC.*

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 2 of 42

## MEMORANDUM OPINION[1]

**ROBERT A. MOLLOY, Chief Judge**

**THIS MATTER** comes before the Court on Defendant Cost-U-Less, Inc.'s ("Cost-U-Less" or "Defendant") Motion to Dismiss Plaintiff's Third Amended Complaint ("Motion to Dismiss") filed on October 6, 2014. (ECF No. 175.) Plaintiff Leopold Williams ("Plaintiff"), as Personal Representative of the Estate of Elton Williams ("Williams"),[2] filed an Opposition on November 13, 2014. (ECF No. 180.) Defendant filed a Reply to Plaintiff's Opposition on December 15, 2014. (ECF No. 182.) On May 31, 2024, Judge Wilma A. Lewis referred Defendant's Motion to Dismiss to Magistrate Judge Emile A. Henderson III. (ECF No. 195.)

Magistrate Judge Henderson filed a Report and Recommendation ("R&R") on August 14, 2024, in which the Magistrate Judge recommended that the Court grant Defendant's motion and dismiss the Third Amended Complaint ("TAC") (ECF No. 174). (ECF No. 190.) Plaintiff filed an Objection to the R&R ("Objection") on August 28, 2024. (ECF No. 191). Defendant filed a Response to Plaintiff's Objection on September 9, 2024. (ECF No. 193.) Plaintiff filed a Reply to this Response on September 23, 2024, with leave of the Court for an extended time to file this Reply. (ECF Nos. 194, 195, 196).

For the reasons discussed below, the Magistrate Judge's R&R will be adopted in part, as modified herein, and rejected in part. The Court will grant in part and deny in part Defendant Cost-U-Less' Motion to Dismiss (ECF No. 175.) Specifically, the Court will dismiss

---

[1] Due to the retirement of the judge previously assigned to this case, the undersigned, exercising his authority as Chief Judge of the District Court, reassigned this case to himself on February 17, 2026.

[2] Mr. Elton Williams passed away during the pendency of this litigation (ECF No. 91), and the personal representative of his estate, Mr. Leopold Williams, is substituted in this litigation.

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 3 of 42

the causes of action in the Third Amended Complaint pleading Defamation *Per Se*, Intentional

Infliction of Emotion Distress, and Fraud as time-barred. The Court will dismiss the causes

of action in the Third Amended Complaint pleading Abuse of Process, Breach of Good Faith

and Fair Dealing, and a violation of the Virgin Islands Fair Labor Standards Act for failure to

state a claim. The Court will additionally strike the Breach of Contract claim. The Court will

not dismiss the cause of action pleading Malicious Prosecution.

## I.    BACKGROUND

The operative complaint in this matter is the TAC. (ECF No. 173). The facts of this case

are recounted in detail in the R&R. (ECF No. 190 at 1-5.) This Court adopts that recitation of

the facts. In brief summary, Plaintiff alleges that Williams was an employee of Defendant

Cost-U-Less and had various responsibilities, including working "as a stocker," "keeping the

shelves filled," and "unloading pallets." (ECF No. 174 at 1.) Plaintiff alleges that around

November 2006, a Cost-U-Less Store Manager by the name of Scott Ramsey ("Ramsey") "had

the store's surveillance videotapes edited and compiled" by another Cost-U-Less employee

"to depict what Ramsey falsely claimed was [Williams] stealing a [] television and a [] home

theater system." *Id.* at 2. Plaintiff alleges that Ramsey "shouted" at Williams, "refused to let

[Williams] see the videotape," "accus[ed] him of being a thief," and finally fired Williams for

"not cooperating about the television." *Id.* at 3. Plaintiff alleges that Williams "asked for his

last paycheck owed to him," which Ramsey refused to give him upon "falsely claiming that

the FBI told him to hold it as collateral," and "went back to the store for three pay periods

but was denied his wages and has never received them." *Id*. Plaintiff alleges that Ramsey,

"angry that [Williams] refused to 'cooperate'" then "falsely reported to the police" the alleged

theft of the television and home theater system. *Id.* at 4. Plaintiff recounts that on November 22, 2008, Williams was arrested "on these knowingly false charges" and "incarcerated for twelve (12) days." *Id*. Plaintiff alleges that stemming from Williams "wrongful discharge from Cost-U-Less," Williams was "out of work for a period of time." *Id.* Plaintiff further alleges that stemming from the arrest, Williams "lost his employment at Office Max and was out of work for six (6) months," following which he "lost his apartment and was evicted." *Id.* Plaintiff alleges that Ramsey "continually harassed, stalked and tormented" Williams, including specific events alleged to have occurred from 2008 to 2009. *Id.* at 5. Plaintiff alleges that a different Cost-U-Less Store Manager later "admitted that there is no such evidence captured on videotape," and the charges were dismissed without prejudice on January 4, 2010. *Id.* at 5-6. Plaintiff alleges that Williams "suffered physical and psychological injuries, including chronic nightmares of being in prison, loss of income, loss of capacity to earn income, mental anguish, pain and suffering and loss of enjoyment of life." *Id.* at 6.

The TAC alleges the following causes of action: (1) "Malicious prosecution and or abuse of process"[3]; (2) "defamation *per se*"; (3) "a breach of contract to pay wages" and a

---

[3] The Court observes that malicious prosecution and abuse of process, while similar, are two separate causes of action. *Greene v. Virgin Islands Water & Power Auth.*, Civil No. 2006-cv-0011, 2011 U.S. Dist. LEXIS 80325, at *37-39 (D.V.I. July 22, 2011), *aff'd,* 557 F. App'x 189 (3d Cir. 2014). A malicious prosecution cause of action under federal law requires "that the conduct complained of was committed by a person acting under color of state law." *McIntosh-Luis v. Petty*, Civil No. 2020-0023, 2024 U.S. Dist. LEXIS 133310, at *9 (D.V.I. July 29, 2024); *see also* 42 U.S.C. § 1983. Because no parties to this proceeding are alleged to be "acting under color of state law," the Court construes the malicious prosecution cause of action as a tort under Virgin Islands law. *See Palisoc v. Poblete*, 60 V.I. 607 (V.I. 2014). Further, the TAC alleges that jurisdiction in this matter is based "on the diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75,000," indicating that a federal cause of action upon which to predicate federal question jurisdiction is not present. (ECF No. 174 at 1.)

violation of the VI Fair Labor Standards Act"; (4) "intentional infliction of emotional distress"; (5) fraud; and (6) "breach of implied contractual duty of good faith and fair dealing." *Id.* at 6-8. The TAC does not tie Plaintiff's various causes of action to particular facts; instead, each cause of action incorporates all facts alleged in the TAC. *Id.* As relief, Plaintiff seeks "pay, interest and other damages" in relation to Count Three. *Id.* at 7. Plaintiff additionally generally seeks "damages compensatory and punitive as they may appear, costs and fees, pre and post judgment interest and such other relief as this court finds fair and just." *Id.* at 8. In Plaintiff's Objections, Plaintiff also alleges a cause of action for violation of the Virgin Islands Wrongful Discharge Act. (ECF No. 191 at 19.)

## II.    LEGAL STANDARD

### A.    Standard of Review

A party may make "specific written objections" to a magistrate judge's report and recommendation "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1) ("Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."). The objections must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis of such objection." LRCi 72.3.

When reviewing a report and recommendation, a district judge must review *de novo* "any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made."). The Supreme Court has instructed that, although 28 U.S.C. § 636 does not require the judge to conduct a *de novo* review if no objections are filed, the statute "does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). Accordingly, the Third Circuit has held that, even in the absence of objections to a report and recommendation, a district court should "afford some level of review to dispositive legal issues raised by the report." *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)); *see also Ellenburg v. Virgin Islands*, Civil No. 23-0035, 2024 U.S. Dist. LEXIS 177759, at *1 (D.V.I. Sept. 30, 2024) (("Even if neither party objects to the magistrate's recommendation, the district court is not bound by the recommendation of the magistrate." (citation modified)) citing *Banco Popular de Puerto Rico v. Gilbert*, 424 F. App'x 151, 153 (3d Cir. 2011). The Third Circuit has described this level of review as "reasoned consideration." *Equal Emp. Opportunity Comm'n*, 866 F.3d at 100.

The Advisory Committee Notes to the 1983 Amendments to Rule 72(b) of the Federal Rules of Civil Procedure state: "[W]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Some district courts have also adopted a "clear error" or "manifest injustice" standard for the review of those portions of a report and recommendation that are not contested. *Massie v. Finley*, Civil No. 2019-01201, 2021 U.S. Dist. LEXIS 264726, at *1 (M.D. Pa. June 2, 2021) (quoting 1983 Advisory Committee Notes that the court is only required to "satisfy itself that there is no clear error on the face of the record in order to

accept the recommendation"); *Cruz v. Chater*, 990 F.Supp. 375, 377 (M.D. Pa. 1998) (noting that court's review is limited to ascertaining whether there is "clear error on the face of the record"); *see also Pratt v. Marsh*, Civil No. 2019-00416, 2021 U.S. Dist. LEXIS 101246, at \*22-23 (E.D. Pa. May 28, 2021), *aff'd sub nom. Pratt v. Superintendent Benner Twp. SCI*, 2023 U.S. App. LEXIS 22922 (3d Cir. Aug. 30, 2023) (citations omitted) ("Uncontested portions of a report and recommendation, as well as portions to which untimely or general objections are made . . . at the very least . . . should be reviewed for clear error or manifest injustice."). Clear error occurs "when reviewing the entire record, the court is left with the definite and firm conviction that a mistake has been committed." *United States v. Griffith*, Civil No. 23-2713, 2024 U.S. App. LEXIS 31239, at \*9-10 (3d Cir. Dec. 10, 2024) (citing *United States v. Caraballo*, 88 F.4th 239, 244 (3d Cir. 2023)). In passing, a panel of the Third Circuit has appeared to accept this clear error or manifest injustice standard. *See Seamon v. Shapiro*, No. 24-1451, 2025 U.S. App. LEXIS 809, at \*3-4 (3d Cir. Jan. 14, 2025) ("The District Judge appropriately conducted a narrow review of the Magistrate Judge's report and recommendation for clear error or manifest injustice, because [Plaintiff] did not file objections to the report.").

### B.    Failure to State a Claim

A complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Third Circuit follows the analysis set forth by the Supreme Court in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* when considering a Rule 12(b)(6) motion:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must take note of the elements the plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions,

are not entitled to the assumption of truth. Finally, when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations omitted).

"When assessing the merits of a Rule 12(b)(6) motion, we accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020). Further the district court must "draw all reasonable inferences" from the allegations and also construe them "in the light most favorable" to the plaintiff. *Connelly*, 809 F.3d at 791 & n.2 (3d Cir. 2016). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to state a claim to relief that is plausible on its face. *See Nekrilov v. City of Jersey*, 45 F.4th 662, 668 (3d Cir. 2022). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Univ. of the Scis.*, 961 F.3d at 208 (quotations omitted).

### III.   DISCUSSION

#### A.   Abuse of Process

The R&R found that "[n]ot only has Williams not stated an abuse of process claim"—because his argument "focuses on the *initiation* of the legal process, not any subsequent misuse of the process"—"but even if he had, the cause of action would be untimely." (ECF No. 190 at 25 (emphasis in original)). Plaintiff filed objections to this finding, stating that he "made a timely claim" and arguing that misuse of process can be "based on a wrongful initiation of criminal proceedings." (ECF No 191 at 17-18.) Upon *de novo* review, the Court adopts the R&R's finding to the extent that the Abuse of Process cause of action be dismissed

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 9 of 42

for failure to state a claim, and does not adopt the R&R's finding that the claim is time-barred because—based on the failure to allege any conduct upon which liability for abuse of process could attach—the Court is unable to determine when a claim might have accrued. *Id.* at 26.

In defining the abuse of process tort under Virgin Islands law, the Superior Court noted that "historically, liability for abuse of process only attached for actions taken *after* the initiation of a lawsuit." *Kiwi Constr., LLC v. Pono*, No. ST-2013-CV-011, 2016 V.I. LEXIS 1, at *7 (V.I. Super. Jan. 15, 2016) (emphasis added). The Court further noted:

> When analyzing an alleged abuse of process, the purpose for which the process is used, once it is issued, is the only thing of importance. Basic to the tort is the requirement that the defendant perform further acts after issuance of process which represent the perversion or abuse of the legitimate purpose of that process. *Liability attaches to the use of process as a club* by which to extort something unrelated to the process from the other party. Phrased differently, *the wrong arises when a legal action initiated with sufficient factual and legal basis is used improperly as leverage*, often in the form of a threat or extortion to obtain some collateral benefit not within the scope of the original action."

*Id.* at *7-8 (emphasis added). Thus, to analyze when the statute of limitations began to run on the abuse of process cause of action, the Court must identify "actions taken after the initiation of a lawsuit" by Cost-U-Less that would constitute "the use of process as a club by which to extort something unrelated to the process from the other party." *Id.* at *7. The TAC alleges no such fact. (ECF No. 173.)

However, liability for abuse of process, both prior to and following the *Kiwi Construction* decision, has never resided in the initiation of process: "the gravamen of the misconduct for which the liability stated in this Section [of the Restatement of Torts defining abuse of process] is imposed is not the wrongful procurement of legal process or the

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 10 of 42

wrongful initiation of criminal or civil proceedings." *Kiwi Constr.*, 2016 V.I. LEXIS 1, at *7

(citing Restatement (Second) of Torts § 682 cmt. A).

The TAC does not contain any allegations of any action (or the date of such action)

attributable to Cost-U-Less following the initiation of criminal proceedings that relate to

Cost-U-Less' use—much less abuse—of legal process. Indeed, Defendant Cost-U-Less was

not a party to the criminal proceeding, and there is no allegation that Cost-U-Less was

involved in the criminal proceeding beyond the former Store Manager's reporting of the

alleged theft. This represents an insufficient pleading of facts under the elements required

to make a plausible abuse of process tort claim. *See Nekrilov*, 45 F.4th at 668; *Kiwi Constr.*,

2016 V.I. LEXIS 1, at *8. In the absence of any allegation to which liability could attach for

abuse of process, the Court cannot speculate as to when such a claim could have accrued. The

R&R concluded that "[n]ot only has Williams not stated an abuse of process claim, but even

if he had, the cause of action would be untimely." (ECF No. 190 at 25.) The Court adopts this

conclusion upon *de novo* review of the issue to the extent that the abuse of process claim is

insufficiently pled to the extent that when a claim could have accrued cannot be determined.

The Court will therefore dismiss the abuse of process cause of action for failure to state a

claim.

### B.    Malicious Prosecution

The R&R found that Plaintiff had not pleaded three of the required four elements for

a malicious prosecution claim, and thus recommended that it be dismissed for failure to state

a claim. (ECF No. 190 at 23.) Plaintiff filed objections to this finding regarding each of the

elements. (ECF No 191 at 13-17.) Upon *de novo* review, the Court finds that the TAC contains

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 11 of 42

sufficient allegations to support each element of the malicious prosecution claim. Thus, the Court rejects the R&R's finding that the malicious prosecution cause of action be dismissed for failure to state a claim.[4]

The elements of the Virgin Islands tort of malicious prosecution are adopted from the "wrongful prosecution of criminal proceedings" tort as defined in the Restatement (Second) of Torts. *Palisoc v. Poblete*, 60 V.I. 607, 614 (2014). The elements are: (1) the initiating of or procuring of a criminal proceeding against the plaintiff by the defendant; (2) the absence of probable cause for the proceeding; (3) malicious intent on the part of the defendant; and (4) termination of the proceeding in favor of the plaintiff. *See id.* at 615. The Virgin Islands Courts also adopted "Restatement (Second) of Torts § 653 for its commentary analysis in applying these elements." *Id.*

### 1. *Initiating of or Procuring of a Criminal Proceeding*

The R&R found that Plaintiff had not sufficiently pled the first element of the malicious prosecution tort claim because "Williams must show that Cost-U-Less' 'desire to have the criminal proceedings initiated was the determining factor in the government commencing prosecution or that [Cost-U-Less] provided false information to the police.'" (ECF No 190 at 18 (quoting *Palisoc*, 60 V.I. at 619)). The R&R stated that "[t]he *Palisoc* Court ruled that 'determining factor' meant 'something more than active participation or consultation on part of the defendant, such as by urging or insisting that the prosecution be brought,'" and that the time lapse of one year and ten months between the report of the theft

---

[4] Defendant did not raise a statute of limitations defense in its Motion to Dismiss regarding the malicious prosecution cause of action. (ECF No. 175 at 3-5.)

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 12 of 42

and the issuance of charges "evidenc[ed] an independent investigation of the matter, over and beyond Cost-U-Less bringing the situation [so] their attention." *Id.* at 18-19 (quoting *Palisoc*, 60 V.I. at 619); *cf. Greene v. Virgin Islands Water & Power Auth.*, 65 V.I. 67at *80 (Super. Ct. 2016), *aff'd*, 67 V.I. 727 (2017) ("The exercise of the officer's discretion to make initiation of the prosecution his own [] protects from liability the person whose information or accusation has led the officer to initiate the proceedings." (quoting Rest. 2d Torts § 653 cmt. g)).

Plaintiff objects, stating that "[t]here is no other way for a private person to initiate a proceeding other than to make a report to a law enforcement agency, which Williams alleged Defendant did when it filed a false police report and provided the doctored video," and therefore the TAC "clearly states that Cost-U-Less initiated criminal proceedings against Williams." (ECF No 191 at 14.) Plaintiff argues that the Magistrate Judge erred by "by arguing that Williams must have done more, such as arguing or insisting on prosecution" and "then by finding that because Cost-U-Less is not liable for Ramsey's causing the videotape to be doctored, the false report could not be attributed to it." *Id.* Defendant, in turn, argues that the Court cannot "*reasonably infer* from Plaintiff's allegations that [Cost-U-Less]'s police report made nearly two years before Mr. Williams' arrest was the determining factor leading to his arrest." (ECF No. 193 at 13.)

To prove initiation or procurement of the criminal proceedings, Virgin Islands law requires *either* that "[the plaintiff] must demonstrate that [the defendant's] desire to have the criminal proceedings initiated was the determining factor in the government commencing prosecution *or* that [the defendant] provided false information to the police."

*Palisoc*, 60 V.I. at 619 (emphasis added); *see also* Rest. 2d Torts § 653 cmt. g ("In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false."). That is, in this disjunctive test for "initiation or procurement of the criminal proceedings," the presence of either condition is sufficient. *Smith v. Wal-Mart Stores, Inc.*, Civil No. 17-02579, 2019 U.S. Dist. LEXIS 185054, at *10 (S.D. Tex. Oct. 24, 2019), *aff'd*, 980 F.3d 1060 (5th Cir. 2020) ("A person reporting criminal conduct to authorities may nevertheless be considered to have procured the proceedings if he 'provides information which he knows is false."); *see also* Rest. 2d Torts § 653 cmt. g ("If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information.").

Here, Plaintiff alleges that Ramsey "had the store's surveillance videotapes edited and compiled . . . to depict what Ramsey falsely claimed was [Williams] stealing a 32-inch LCD Norent television and a Sony DVD home theater system" and that Ramsey "falsely reported to the police" that Williams "had been caught on video surveillance cameras stealing" the television and theater system. (ECF No. 174 at 2, 4.) Plaintiff also alleges in the TAC that (1) when "the video discs that [Ramsey] had falsely represented showed [Williams] stealing the TV were obtained by his public defender and were reviewed," it was "verified that [Defendant] Cost-U-Less, Inc. had falsely claimed [Williams] was seen stealing when in

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 14 of 42

reality they showed no such thing and showed nothing at all about a TV or home theater system being stolen"; (2) Defendant, "through its current Store Manager," "has admitted that there is no such evidence captured on videotape"; and (3) that another employee of Defendants' "also agreed there is nothing showing Plaintiff putting a TV into a box and taking it out of the store." *Id.* at 5-6. Upon *de novo* review and "accept[ing] as true all factual allegations in the complaint and view[ing] those facts in the light most favorable to the non-moving party," *Univ. of the Scis.*, 961 F.3d at 208, the Court finds that this is a sufficient allegation to fulfill the first element of a malicious prosecution tort—"the initiating of or procuring of a criminal proceeding against the plaintiff by the defendant," *Palisoc*, 60 V.I. at 615—if Ramsey's actions can be imputed to his employer, Defendant Cost-U-Less.

The R&R found that "Ramsey was acting in the scope of his employment in reporting Williams' behavior to the police." (ECF No. 90 at 17 n.6.) However, the R&R found that the "allegation that Ramsey caused the videotape to be doctored falls outside of the scope of his employment as a Cost-U-Less manager, and was based on personal animus to Williams." *Id.* at 17. Plaintiff objects to this finding, arguing several theories for liability including (1) vicarious liability, (2) the doctrine of respondeat superior, (3) an "agency theory" of vicarious liability, (4) an "authorization or ratification" theory, (5) a "reliance on apparent authority" theory, and (6) a "delegated authority" theory. (ECF No 191 at 2-9.)

Under Virgin Islands law, "[a]n employer's liability for the torts of its employee under a *respondeat superior* theory turns on the question of whether the employee's actions were done within the course and scope of the employment or otherwise constituted expectable conduct given the nature and scope of the employment." *Walker v. Virgin Islands Waste Mgmt.*

*Auth.*, 62 V.I. 53, 60 (V.I. Super. Ct. 2014). Any employee's conduct is "within the scope of employment" when: (1) "it is of the kind [the employee] is employed to perform"; (2) "it occurs substantially within the authorized time and space limits"; (3) "it is actuated, at least in part, by a purpose to serve the [employer]", and (4) "if force is intentionally used by the [employee] against another, the use of force is not unexpectable by the [employer]." *Id.* at 61. Thus, the Court agrees with the R&R's finding that "Ramsey was acting in the scope of his employment in reporting Williams' behavior to the police." (ECF No. 90 at 17 n.6.)

Under the framework provided by Restatement (Second) of Torts § 653 for malicious prosecution, corporations have been evaluated for liability for malicious prosecution when their employees allegedly provide false information to law enforcement, even when "the corporation" does not appear to have specific information regarding the falsity. *See, e.g.*, *Wal-Mart Stores*, 2019 U.S. Dist. LEXIS 185054, at *11-15  (analyzing Wal-Mart as potentially liable for the actions of two of its store managers in providing allegedly "'false, inaccurate, incomplete statements and information' to law enforcement" regarding the identifying features of a thief); *Perry v. Redner's Mkt., Inc.*, Civil No. 2009-5645, 2010 U.S. Dist. LEXIS 62002, at *11-12 (E.D. Pa. June 21, 2010) ("[Plaintiff's] allegation of a deliberate misidentification [against the Defendant-Store] is further supported by the allegation that [a] co-worker who ultimately pled guilty to the unauthorized uses of the lost credit card[] told the investigator . . . that [a store manage and security employee] pressured her to lie to the police and falsely implicate [plaintiff] in the crimes."); *Simon v. Nw. Univ.*, 183 F.Supp.3d 908, 918 (N.D. Ill. 2016) ("Plaintiff may proceed on his malicious prosecution claim against Defendant Northwestern [University] based on the agency-based and employer–employee

theories of liability as outlined in his complaint."). Indeed, "in order to hold the employer liable for the act of an agent in initiating or participating in a malicious prosecution, it must have been undertaken by the agent either for the protection of the employer's property or for the purpose of recovering property for the benefit of the employer." *Kauf v. Great Atl. & Pac. Tea Co.*, 64 F.Supp. 700, 702 (S.D.W. Va. 1946).

The TAC alleges that Ramsey was Defendant's Store Manager, that Ramsey compiled the store's surveillance videotapes, and reported the theft of Defendant's property to the police. (ECF No. 176 at 2, 4.) Regardless of whether Ramsey "edited" the videotape "to depict what Ramsey falsely claimed was [Williams] stealing a 32-inch LCD Norent television and Sony DVD home theater system" or the videotape "showed nothing at all about a TV or home theater system being stolen," *id.* at 2, 5, Plaintiff has made a sufficient allegation that Ramsey, in his capacity as Store Manager, was acting "for the protection of [his] employer's property," *Kauf*, 64 F.Supp. at 702, by taking steps to protect the store's merchandise by reporting a possible theft to law enforcement. Thus, upon *de novo* review and "accept[ing] as true all factual allegations in the complaint and view[ing] those facts in the light most favorable to the non-moving party," *Univ. of the Scis.*, 961 F.3d at 208, the Court finds that this is a sufficient allegation to fulfill the first element—"the initiating of or procuring of a criminal proceeding against the plaintiff by the defendant," *Palisoc*, 60 V.I. at 614—of the malicious prosecution claim.

### 2. *The Absence of Probable Cause for the Proceeding*

The R&R determined that Plaintiff had not sufficiently pled the second element of the malicious prosecution tort claim because "while doctoring a videotape could be evidence of

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 17 of 42

malice, [Plaintiff] does not argue that point in his opposition, and in any event, the Court does not attribute that behavior of Ramsey's to Cost-U-Less.'" (ECF No 190 at 21.) Plaintiff filed objections to this finding, stating that "Cost-U-Less authorized Ramsey to make reports to the police based on the information he knew" and an employer cannot escape liability for the wrongdoing of an employee "simply by claiming, after the fact, that it didn't like the way the employee did it." (ECF No 191 at 13-17.)

The Restatement Second Torts defines the "existence of probable cause" as it relates to malicious prosecution as the accuser "reasonably believ[ing]" that (1) "that the person whom he accuses has acted or failed to act in a particular manner," (2) "that those acts or omissions constitute the offense that he charges against the accused," and (3) "that he is sufficiently informed as to the law and the facts to justify him in initiating or continuing the prosecution." Rest. 2d Torts § 662; *see also* Rest. 2d Torts § 653 cmt. a (incorporating Rest. 2d Torts § 662 into § 653); *Palisoc*, 60 V.I. at 615 (adopting the commentary of Rest. 2d Torts § 653 as Virgin Islands law); *see also Gvozden v. Mill Run Tours, Inc.*, Civil Nos. 2010-4595 & 2010-4606, 2016 U.S. Dist. LEXIS 31997, at *7 (N.D. Ill. Mar. 11, 2016) ("In malicious prosecution cases . . . 'it is the state of mind of the person *commencing* the prosecution that is at issue—not the actual facts of the case or the guilt or innocence of the accused.'" (emphasis in original)).

However, by alleging that Ramsey "edited" the videotape "to depict what Ramsey falsely claimed was [Williams] stealing a 32-inch LCD Norent television and Sony DVD home theater system" while also alleging that the videotape in fact "showed nothing at all about a TV or home theater system being stolen," *id.* at 2, 5, Plaintiff has made a sufficient allegation

that Ramsey, in his capacity as Store Manager—and acting "for the protection of [his] employer's property," *Kauf*, 64 F.Supp. at 702—could not have reasonably believed that Williams did indeed steal the television and home theater system. Thus, upon *de novo* review and "accept[ing] as true all factual allegations in the complaint and view[ing] those facts in the light most favorable to the non-moving party," *Univ. of the Scis.*, 961 F.3d at 208, the Court finds that this is a sufficient allegation to fulfill the second element—"the absence of probable cause for the proceeding," *Palisoc*, 60 V.I. at 614—of a malicious prosecution claim.

### 3. Malicious Intent

The R&R determined that Plaintiff had not sufficiently pled the third element of the malicious prosecution tort claim because "while doctoring a videotape could be evidence of malice, [Plaintiff] does not argue that point in his opposition, and in any event, the Court does not attribute that behavior of Ramsey's to Cost-U-Less.'" (ECF No 190 at 21.) Plaintiff objects, stating: "[w]hen a person makes a false report and presents falsified evidence to the police, malicious intent must be assumed; there could be neither benevolent nor innocuous intent." (ECF No. 191 at 16.)

As adopted by Virgin Islands courts, "[l]ack of probable cause for the initiation of criminal proceedings, in so far as it tends to show that the accuser did not believe in the guilt of the accused, is evidence that he did not initiate the proceedings for a proper purpose." Rest. 2d Torts § 669; *see also id.* § 668 cmt. e ("one who initiates the proceedings cannot do so for a proper purpose if his real purpose is to harm the accused because of spite, ill will or personal hostility to him."); *id.* § 653 cmt. a (incorporating Rest. 2d Torts § 668-69 into § 653); *Palisoc*, 60 V.I. at 615 (adopting the commentary of Rest. 2d Torts § 653 as Virgin

Islands law). The absence of probable cause in the instant case, alone, is indicative of a sufficient pleading of malice. *Cf. Griffiths v. CIGNA Corp.*, 988 F.2d 457 (3d Cir. 1993), *aff'd*, 60 F.3d 814 (3d Cir. 1995), *overruled on other grounds by Miller v. CIGNA Corp.*, 47 F.3d 586 (3d Cir. 1995) ("Malice has been stated to include ill-will in the sense of spite, the use of a prosecution for an extraneous, improper purpose, or the reckless and oppressive disregard of the plaintiff's rights. Malice may be inferred from the absence of probable cause." (citations omitted)). However, malice is additionally pleaded in the allegation that Ramsey ordered that the surveillance videotapes be "edited and compiled" to "depict" Williams "stealing" a television and a home theater set. In addition to that, the TAC is rife with other allegations of malice, such as "Ramsey shouted and spoke to [Williams] as if he were [William]'s father and [Williams] was a child," that Ramsey "badgered him to bring back the television," that "Ramsey told [Williams] that since he was not cooperating about the television he was fired," and that Ramsey "was angry that Plaintiff refused to 'cooperate' with his false accusations." (ECF No. 176 at 3-4.) Thus, upon *de novo* review and "accept[ing] as true all factual allegations in the complaint and view[ing] those facts in the light most favorable to the non-moving party," *Univ. of the Scis.*, 961 F.3d at 208, the Court finds that this is a sufficient allegation to fulfill the third element—"malicious intent on the part of the defendant," *Palisoc*, 60 V.I. at 614—of a malicious prosecution claim.

### 4. Termination of the Proceedings in Favor of the Plaintiff

The R&R determined that Plaintiff had not sufficiently pled the fourth element of the malicious prosecution tort claim— the "termination of the proceeding in favor of the plaintiff." *Palisoc*, 60 V.I. at 614—because the charges were dismissed 'without prejudice,'"

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 20 of 42

the implication is that "the charges were not dismissed in Williams' favor. (ECF No. 190 at 23.) Plaintiff objects, arguing the charges were dismissed in Williams' favor because "the Government of the Virgin Islands had not reinitiated any criminal proceedings against [] Williams and the statute of limitations had long expired before [] Williams died." (ECF No. 191 at 16-17.)

The R&R relies on *Arellano v. Rich*, a Virgin Islands case interpreting the related tort of "wrongful use of civil proceedings" for the proposition that "courts have generally accepted that dismissals with prejudice are sufficient to meet the favorable termination requirement for purposes of wrongful use of civil proceedings while terminations due to statute of limitations, failure to prosecute, *dismissals without prejudice*, voluntary dismissals, and settlements in lieu of litigation are generally not considered favorable terminations." 70 V.I. 696, 717 (Super. Ct. 2019) (emphasis added). *Arellano*, in turn, relied on *Barrett Mobile Home Transportation, Inc. v. McGugin* for the proposition that "a voluntary dismissal without prejudice is not a favorable termination." *Id.* at n.61. However, the *Barret Mobile Home* Court stated: "[w]hile a termination in favor of a prior defendant for purposes of bringing a malicious prosecution action may occur in a number of ways, we now establish that a final determination on the merits is not necessary and that a voluntary dismissal 'without prejudice' will suffice."[5] 530 So.2d 730, 735 (Ala. 1988); *see also Geness v. Cox*, 902 F.3d 344,

---

[5] The comments in the Restatement regarding "manner of termination" states that "[t]he usual method by which a public prosecutor signifies the formal abandonment of criminal proceedings is by the entry of a nolle prosequi" and that "[t]he rule stated in this Section is applicable, however, to any method other than that of the entry of a nolle prosequi, by which a public prosecutor may formally abandon the prosecution of the proceedings as, for example, by a motion to dismiss the complaint." Rest. 2d Torts § 659 cmt. c; *id.* § 653 cmt. a (incorporating Rest. 2d Torts § 659 into § 653); *Palisoc*, 60 V.I. at 615 (adopting the commentary of Rest. 2d Torts § 653 as Virgin Islands law). There are no allegations to suggest that proceedings against Williams were

356 (3d Cir. 2018) ("the *nol pro* termination here was a favorable termination, for the abandonment of charges for 'insufficient evidence' unquestionably provides 'an indication that the accused is actually innocent of the crimes charged.'"). This Court thus concludes that a "voluntary dismissal without prejudice" is indeed a favorable termination.[6]

The R&R further relies on the comments to Restatement Second of Torts § 660 regarding "indecisive termination of proceedings" that "the abandonment of particular proceedings does not constitute a final termination of the case in favor of the accused. Only an abandonment of the charge brought against him will suffice." Rest. 2d Torts § 660 cmt. d; *id.* § 653 cmt. a (incorporating Rest. 2d Torts § 660 into § 653); *Palisoc*, 60 V.I. at 615 (adopting the commentary of Rest. 2d Torts § 653 as Virgin Islands law). Plaintiff alleges that "[t]he charges were finally dismissed without prejudice against the Plaintiff on January 4, 2010." (ECF No. 174 at 6.) That constitutes dismissal of the *charges*, not the *proceedings*. Thus, upon *de novo* review and "accept[ing] as true all factual allegations in the complaint and view[ing] those facts in the light most favorable to the non-moving party," *Univ. of the Scis.*, 961 F.3d at 208, the Court finds that this is a sufficient allegation to fulfill the fourth element—"termination of the proceeding in favor of the plaintiff," *Palisoc*, 60 V.I. at 614—of a malicious prosecution claim.

---

reinstated or that the dismissal of charges without dismissal occurred by any method other than a "usual method by which a public prosecutor signifies the formal abandonment of criminal proceedings."

[6] Indeed, the People of the Virgin Islands' Motion to Dismiss in the underlying case against Williams seeking dismissal of the grand larceny and possession of stolen property charges states that "[t]he People are unable to sustain its burden of proof at this time." Motion to Dismiss, *People v. Williams*, No. SX-08-CR-559 (V.I. Super. Dec. 15, 2009).

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 22 of 42

In sum, because the Plaintiff has sufficiently pleaded each element of the tort of malicious prosecution, the Court will not dismiss this claim.

### C.    Defamation *Per Se*

The R&R found that it "is clear from the face of the complaint" that a defamation *per se* cause of action in relation to these 2006 and 2007 "are time barred by the two-year statute of limitations for defamation claims" and recommends dismissal of this claim. (ECF No. 190 at 35.) Plaintiff "declined to challenge" the R&R regarding the defamation claim. (ECF No. 191 at 20.) Upon plain error review, the Court adopts the R&R to the extent that the Court finds the defamation *per se* claim to be time-barred.

The statute of limitations on a claim "can serve as the basis for dismissal under Rule 12(b)(6), as long as the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *McPherson v. United States*, 392 F. App'x 938, 943 (3d Cir. 2010); *see also Tyson v. Samuel*, Civil No. 2011-050, 2014 U.S. Dist. LEXIS 35913, at *3 (D.V.I. Mar. 19, 2014) ("A statute of limitations defense may serve as the basis for a motion to dismiss brought under Rule 12(b)(6)"). Whether a claim has been brought within the applicable statute of limitations "may be apparent from the face of a complaint" and "[t]he factual allegations in the complaint . . . control the court's decision whether to dismiss the suit." *McPherson*, 392 F. App'x at 943; *see also Erbey Holding Corp. v. BlackRock Fin. Mgmt., Inc.*, 78 V.I. 206, 364 (Super. Ct. 2023) ("the complaint so clearly reveals the existence of the statute of limitations defense, that the court had to grant the defendants motion to dismiss the plaintiffs' negligence claims."). "The traditional rule is that the Statute of Limitations on any cause of action generally begins to run on the occurrence

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 23 of 42

of the essential facts that give rise to that cause of action." *Burton v. First Bank of Puerto Rico*,

49 V.I. 16, 20 (Super. Ct. 2007).

In diversity actions, such as this one, the district court "must apply the substantive

laws of the forum, which include statutes of limitations." *Codrington v. Steadfast Ins. Co* No.

23-2949, 2024 U.S. App. LEXIS 17901, at *14 (3d Cir. July 22, 2024). Under Virgin Islands

law, the statute of limitations for torts, defined as "any injury to the person or rights of

another not arising on contract," is two years. 5 V.I.C § 31(5)(A); *see also Emanuel v. Great

Am. Ins. Co.*, Civil No. 75-482, 1976 U.S. Dist. LEXIS 16125, at *4 (D.V.I. Mar. 16, 1976) ("[I]t is

plain to this Court that plaintiff's complaint sounds partially in tort, [and] that the tort claims

fall squarely within 5 V.I.C. § 31(5)(A)[.]"). Virgin Islands courts have held defamation to "fall

within this two-year period for torts." *Fahie v. Ferguson*, Case Nos. ST-2016-CV-00638 & ST-

2016-CV-00682, 2021 VI SUPER 38U, at *21 (V.I. Super. Ct. Mar. 29, 2021). Thus, for a

defamation *per se* cause of action to have accrued within the statute of limitations for this

suit commencing on March 25, 2011, the cause of action must have accrued by March 25,

2009.

Plaintiff's current theory of liability under this tort alleges that the defamation *per se*

occurred when Ramsey "told other employees that Plaintiff was a thief and falsely report

that Plaintiff was a thief to the police."[7] (ECF No. 180 at 21.) Defendant argues that these

---

[7] Defendant initially argued that the allegedly defamatory statements made by Ramsey on April 14, 2009, in Court "stating publicly that [Williams] was a thief" was insufficiently pled because the statement cannot be imputed to Cost-U-Less. (ECF No. 175 at 11.) Plaintiff did not respond to this argument, and instead made new arguments in his Opposition. (ECF No. 180 at 21.) The R&R concluded that this argument was thereby waived. (ECF No. at 33.) This Court adopts that conclusion. *See, e.g., Sportscare of Am., P.C. v. Multiplan, Inc.*, Civil No. 2010-4414, 2011 U.S. Dist. LEXIS 14253, at *4 (D.N.J. Feb. 10, 2011) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 24 of 42

statements are time-barred, in addition to being insufficiently pled, because the TAC states

that these alleged statements to other employees and to the police occurred on November

21, 2006 and January 10, 2007, respectively. (ECF No. 182 at 12). Because Plaintiff takes the

position that the facts underlying the defamation *per se* claim are statements made on

November 21, 2006 and January 10, 2007, and those dates precede March 25, 2009—the

date by which the claim must accrue under the statute of limitations—the Court finds the

defamation *per se* claim to be time-barred.[8] Upon plain error review, the Court thus adopts

the R&R's finding that the defamation *per se* claim is time-barred.

### D.    Breach of Contract to Pay Wages

The TAC states for Count Three that the "actions of the Defendant *constitute a breach*

*of contract to pay his wages* and a violation of the VI Fair Labor Standards Act." (ECF No. 174

at 7 (emphasis added)). The R&R is silent on this breach of contract claim. The Court will

strike the breach of contract claim from the TAC for failure to comply with the Court's prior

Orders.

Plaintiff proposed this breach of contract claim in his Motion to Amend Second

Amended Complaint. (ECF No. 143.) Then-Magistrate Judge George W. Cannon denied

Plaintiff leave to amend the Complaint in this manner, stating: (1) "Plaintiff knew of his

breach of contract claim at the time of filing his original complaint," (2) "Plaintiff fails to

explain why he did not include the breach of contract claim in his original complaint," and

(3) "Plaintiff also fails to explain why he did not include these proposed amendments in his

---

[8] As such, the Court need not reach whether the claim should also be dismissed for failure to state a claim or whether Defendant is liable for Ramsey's actions.

earlier motions to amend." (ECF No. 159 at 3.) This Court affirmed the Magistrate Judge's Order, stating: "the Court affirms in part the Magistrate Judge's [] Order, to the extent that the Magistrate Judge denied Plaintiff leave to [] add [the] new cause[] of action … [for] breach of contract." (ECF No. 169 at 9-10, 15.) Accordingly, this Court will strike the breach of contract claim from the TAC. *See, e.g.*, *Davis v. Dawgs of St. John, Inc.*, Civil No. 2020-0112, 2023 U.S. Dist. LEXIS 118662, at *10 (D.V.I. July 11, 2023) ("When the Court orders specific amendments, a party is not free to stray from the limits of the order, and the Court may strike the amended pleading.").

### E.      Violation of the Virgin Islands Fair Labor Standards Act ("VI FLSA")

The R&R recommends dismissal of the VI FLSA claim for both failure to state a claim in addition to being time-barred. (ECF No. 190 at 36.) Plaintiff filed objections to this finding, stating that the VI FLSA requires employers to pay employees a minimum wage and "[z]ero is less than the minimum wage." (ECF No. 191 at 9-10.) Upon *de novo* review, the Court rejects the R&R's findings regarding the applicable the statute of limitations and the timeliness of this claim, and adopts the R&R's recommendation this claim be dismissed for failure to state a claim.

### 1. VI FLSA – *Statute of Limitations*

The R&R found the appropriate statute of limitations for an alleged VI FLSA violation to be "either three years under 5 V.I.C. § 31(4)(B), governing actions 'upon a statute for penalty or forfeiture, where the action is given to the party aggrieved' or two years, under 5 V.I.C. § 31(5)(B), governing actions 'upon a statute for a forfeiture or penalty.'" (ECF No. 190

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 26 of 42

at 35.) Plaintiff objects and argues that the applicable law is a six-year statute of limitations.

(ECF No. 191 at 9-10.) The Court finds the applicable statute of limitations to be six years.

As the R&R correctly noted, some sections of the VI FLSA do indeed impose *penalties*

for *employers* who fail to abide by the statute's requirements, for which a two-year statute of

limitations would apply. 24 V.I.C. § 15-16. However, the section of the VI FLSA that permits

*an employee* to seek redress only authorizes *remedial* relief:

> Any employer who pays any employee less than the applicable wage rate to
> which such employee is entitled . . . shall be liable to such employee affected
> for the full amount of such wage rate, less any amount actually paid to such
> employee by the employer, and for costs and such reasonable attorney's fees
> as may be allowed by the court.

24 V.I.C. § 17(a).[9] Thus, the District Court and the Virgin Islands Courts have applied a six-

year statute of limitations to the VI FLSA, as a "liability created by statute, other than a

penalty or forfeiture" is six years. *McDonald v. Davis*, 51 V.I. 573, 606 (D.V.I. 2009) (finding a

VI FLSA claim of an employee seeking unpaid wages from a former employer to be timely

within the six-year statute of limitations); *see also Rijo v. Am. Paradise Properties, Inc.*, No. ST-

17-CV-252, 2018 V.I. LEXIS 162, at *2-4 (V.I. Super. Ct. May 2, 2018) (finding a VI FLSA claim

of an employee for overtime compensation accrued within the six-year statute of

limitations).

This Court will follow the precedent of this District Court and the Virgin Islands

Courts for two reasons. First, the Court defers to the precedent of the Virgin Islands Courts

on the interpretation of Virgin Islands law. *Cf. Edwards v. Hovensa, LLC*, 497 F.3d 355, 359-

---

[9] A different statute of limitations may apply for causes of action pursued under the provisions of the VI FLSA
that permit penalties rather than remedial relief. *See, e.g.,* 24 V.I.C. § 16.

61 (3d Cir. 2007) ("[28 U.S.C.] § 1613 mandates that the relations between courts established by laws of the United States, e.g., the Revised Organic Act, and [Virgin Islands] courts established by local law should mirror the relations between state and federal courts"). Second, the Court finds the rationale of *Sebastian v. Est. of Fredericks* persuasive in this instance. 22 V.I. 78 (Terr. V.I. June 25, 1986). The *Sebastian* Court analyzed the statute of limitations applicable to rent control provisions codified in Virgin Islands property law, wherein the law permitted the tenant to "bring an action for double the amount by which the rent paid exceeds the applicable rent ceiling." 28 V.I.C. § 844(a). The *Sebastian* Court differentiated remedial relief from penalties in determining the applicable statute of limitations:

> To the extent that 844(a) provides that the overcharging landlord must repay to the victimized tenant the amount by which he has overcharged the tenant, so as to make him whole, the relief provided by 844(a) is remedial, provides for the payment of damages suffered by the tenant. To the extent that 844(a) requires the offending landlord to pay the rent overcharged a second time, the statute is penal, although the penalty is a civil and not a criminal one. Since 5 V.I.C. § 31(3)(B) provides an action upon a liability created by statute, "other than a penalty," civil or criminal, this limitation is inapplicable to 28 V.I.C. § 844(a).

22 V.I. 78 at 81. As noted above, the statute in the VI FLSA permitting an employee to seek redress only authorizes remedial relief. 24 V.I.C. § 17(a). Thus, the authorized relief in the full amount of the wage rate—and not damages—is a "liability created by statute, other than a penalty or forfeiture," for which the applicable statute of limitations is six-years.

Thus, for a VI FLSA cause of action to have accrued within the statute of limitations for this suit commencing on March 25, 2011, the cause of action must have accrued by March 25, 2005. VI FLSA violations accrue each pay day, and the statute of limitations runs

separately from the date of each paycheck that is alleged to constitute a VI FLSA violation. *Rijo*, 2018 V.I. LEXIS 162, at *2-4. Because Plaintiff alleges that his final paycheck was not paid to him on January 8, 2007, a claim—if colorable—could have accrued on that day and would not be time-barred. This Court will not dismiss the VI FLSA cause of action as time-barred.

### 2. VI FLSA – *Failure to State a Claim*

The R&R found Plaintiff to have waived any opposition to the dismissal of the VI FLSA claim by failing to contest the motion to dismiss as to this claim. (ECF No. 190 at 36). In his Objection, Plaintiff argues that he "clearly stated a claim for violating the statute" because the TAC alleges that Defendant "refused to provide [Williams'] final paycheck despite several attempts to retrieve it." (ECF No. 191 at 10.) Defendant argues that "conflates the payment by an employer of a wage less than the legal minimum wage . . . with the simple non-payment of a wage that is otherwise sufficient" and "[t]he VIFLSA does not impose liability for the alleged failure by an employer to deliver a final paycheck to an employee." (ECF No. 193 at 10.) Defendant further argues that the TAC is insufficient because it "does not even allege Plaintiff's 'wage rate'" while Plaintiff was employed. *Id.*

The VI FLSA states: "Any employer who pays any employee less than the applicable wage rate to which such employee is entitled . . . shall be liable to such employee affected for the full amount of such wage rate." 24 V.I.C. § 17. It cannot be disputed that paying *no* wages constitutes "less than the applicable wage rate," and at least one Virgin Islands court has held that the VI FLSA governs unpaid wages. *Browne v. Revan*, No. ST-12-SM-288, 2013 V.I. LEXIS 19, at *7 (V.I. Super. Mar. 22, 2013) ("[T]here is sufficient evidence that [Plaintiff] is owed

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 29 of 42

compensation for work performed on the East End Medical Clinic construction project [and] the Virgin Islands Fair Labor Act is the applicable law governing this matter[.]").

Further, Virgin Islands courts have held that the "VIFL[S]A is interpreted in accordance with [the federal] FLSA." *Rijo*, 2018 V.I. LEXIS 162, at *2-4. The federal FLSA unequivocally governs unpaid wages. *See, e.g.*, *Montalvo v. Larchmont Farms, Inc.*, Civil No. 2006-2704, 2009 U.S. Dist. LEXIS 11275,1 at *17 (D.N.J. Dec. 3, 2009) ("[A] reasonable jury could determine that Defendant never paid Plaintiffs their final paychecks, and thus they have 'unpaid' wages under the FLSA[.]"); *Davis v. Erigere Rapidus Sols. ERS, Inc.*, Civil No. 23-23279, 2024 U.S. Dist. LEXIS 97373, at *12 (D.N.J. May 31, 2024) ("Plaintiff alleges that Defendants hired him, supervised him, and fired him, set his rate of pay, assigned his work, and that Defendants . . . refused to give him his final check once he was terminated. . . . These allegations, accepted as true for purposes of deciding this motion, are sufficient for the Court to find that Plaintiff has stated viable causes of action for violation of the FLSA and NJWHL").

This Court is aware of no authority establishing the elements of a VI FLSA claim. However, as noted above, the "VIFL[S]A is interpreted in accordance with [the federal] FLSA." *Rijo*, 2018 V.I. LEXIS 162, at *3; *see also McDonald v. Davis*, Civil No. 2004-0093, 2009 U.S. Dist. LEXIS 44709, at *7 (D.V.I. May 18, 2009) ("The Third Circuit has recognized that the Virgin Islands FLSA resembles the federal Fair Labor Standards Act[.]" (citing *Amalgamated Workers Union v. Hess Oil Virgin Islands Corp.*, 478 F.2d 540, 545 (3d Cir.1973) ("The [federal] Fair Labor Standards Act . . . is analogous to the Virgin Islands statute.")). Thus, the Court will adopt the elements of the federal FLSA unpaid wages, excluding the interstate commerce element, for the VI FLSA unpaid wages claim. Those elements are: (1) "an

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 30 of 42

employer/employee relationship between plaintiff and defendant, within the meaning of the

[VI] FLSA"; and (2) "the approximate number of hours during which the plaintiff was not

paid any wages, for unpaid wages claims." *Wu v. E. Ocean Agric. Corp.*, Civil No. 2021-668

2022 U.S. Dist. LEXIS 23152, at *6-7 (D. Del. Feb. 9, 2022). Here, Plaintiff plainly fails on the

second element. While Plaintiff alleges that (1) Williams "asked for his last paycheck owed

to him"; (2) Ramsey refused to give Williams the paycheck, "falsely claiming that the FBI told

him to hold it as collateral"; and (3) Williams "went back to the store for three pay periods

but was denied his wages and has never received them to this day" (ECF No. 174 at 3), none

of these allegations contain the approximate number of hours during which Williams was

not paid any wages.

Thus, Plaintiff has not sufficiently pled a claim under the VI FLSA, and the Court will

adopt the R&R's recommendation regarding the insufficiency of the allegations for a VI FLSA

claim and dismiss this claim. However, the Court will grant Plaintiff leave to amend this

deficiency for this count alone.[10]

### F.    Intentional Infliction of Emotional Distress ("IIED")

The R&R recommends dismissal of the IIED claim for both failure to state claim in

addition to being time-barred. (ECF No. 190 at 30.) Plaintiff filed objections to this finding.

(ECF No. 191 at 18-19.) Upon *de novo* review, the Court adopts the R&R to the extent that the

Court finds the IIED claim to be time-barred.

---

[10] The Third Circuit champions "[a] liberal policy toward allowing amendment to correct errors in the pleadings." *Schomburg v. Dow Jones & Co.*, 504 Fed. App'x 100, 103 (3d Cir. 2012). Thus, "leave to amend ordinarily should be denied only when amendment would be inequitable or futile." *Id.* Inclusion of the numbers of hours for which Williams was not paid any wages would not be a futile amendment, nor inequitable.

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 31 of 42

Courts apply a two-year statute of limitations to IIED. *See, e.g., Fahie*, 2021 VI SUPER 38U, at *21; *Pickering v. Arcos Dorados Puerto Rico, Inc.*, Civil No. 2014-92, 2016 U.S. Dist. LEXIS 42208, at *14 (D.V.I. Mar. 30, 2016). Thus, for an IIED cause of action to have accrued within the statute of limitations for this suit commencing on March 25, 2011, the cause of action must have accrued by March 25, 2009.

Defendant argues that the alleged IIED caused by Ramsey accrued on either November 22, 2008—when Williams was arrested and thus had "reason to know that [] Ramsey allegedly set out to intentionally manufacture a false surveillance tape against him"—or on December 12, 2008—when "Ramsey allegedly harassed, stalked and tormented him." (ECF No. 175 at 4.) Plaintiff did not respond to the time-bar argument in his Opposition to the Motion to Dismiss.[11] (ECF No. 180 at 21-23.) However, in objecting to the R&R, Plaintiff claims for the first time that "[a]lthough the underlying behavior, the basis for the claim, and some of the resulting injury occurred more than two years before the claim was filed, based on the discovery doctrine, the statute of limitation was not tolled until Williams discovered that the video had been tampered with" in April 2009. (ECF No. 191 at 19.) Because Plaintiff both acknowledges that his alleged basis for the claim is time-barred because it "occurred more than two years before the claim was filed," and because Plaintiff waived such an argument by failing to oppose Defendant's Motion to Dismiss in this regard, this Court need only consider the applicability of the discovery rule to toll the statute of limitations for the IIED claim.

---

[11] The R&R concluded that this argument was thereby waived. (ECF No. at 33.) This Court adopts that conclusion. *See, e.g., Sportscare of Am*, 2011 U.S. Dist. LEXIS 14253 at *4.

The discovery rule applies in tort cases to toll the statute of limitations when "the injury or its cause was not immediately known despite the exercise of due diligence." *In re Alumina Refinery Toxic Dust Claims*, 78 V.I. 186, 195 (V.I. Super. Ct. 2023). Tolling continues until "the plaintiff knows, or reasonably should know: (1) that he or she has been injured; and (2) that the injury has been caused by another party's conduct." *Id.* The plaintiff need not have "[p]recision and certainty of the injury and cause," but instead must "possesses sufficient critical facts to put [them] on notice that a wrong has been committed and that [they] need[] to investigate to determine whether [they] [are] entitled to redress." *Id.* at 195-96. The plaintiff bears the burden of demonstrating that the discovery rule applies. *Oliver v. Terminix Int'l Co., LLP*, 73 V.I. 210, 217 (V.I. Super. Ct. 2020). To benefit from the discovery rule, "a plaintiff must establish that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Id.* This determination is made under "an objective, reasonable person standard." *Burt v. Lockheed Martin Corp.*, 79 V.I. 801, 815 (2024). To bear his burden under the discovery rule, Plaintiff offers that "[t]he creation of false evidence makes Defendant's conduct extreme and outrageous" and that "[d]espite his efforts to obtain the video previously, Williams did not know it was fraudulent until April 2009." (ECF No. 191 at 19.) However, the discovery rule does not require a plaintiff to have "[p]recision and certainty of the injury and cause." *In re Alumina Refinery Toxic Dust Claims*, 78 V.I. at 195. It only requires a plaintiff to "possesses sufficient critical facts to put [them] on notice that a wrong has been committed and that [they] need[] to investigate to determine whether [they] [are] entitled to redress." *Id.* at 195-96. Further,

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 33 of 42

courts that have evaluated the applicability of the discovery rule to IIED claims have found

that a plaintiff "should have known" of the injury and the cause at the time they "may have

suffered from a type of emotional distress injury." *Watson v. City of Philadelphia*, Civil No.

2006-0883, 2006 U.S. Dist. LEXIS 70869, at *9-10 (E.D. Pa. Sept. 28, 2006).

The TAC alleges that Williams, on January 8, 2007, was "falsely told . . . that the FBI

had viewed a videotape of [Williams] stealing a television." (ECF No. 174 at 2.) In response,

Williams "was angry at being falsely accused and asked to see the alleged videotape." *Id.* at

3. These were sufficient critical facts to put Williams on notice as to the veracity of the

videotape and alert him to his need to investigate. *In re Alumina Refinery Toxic Dust Claims*,

78 V.I. at 195-96; *cf. Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) ("A plaintiff's

ignorance regarding the full extent of his injury is irrelevant to the discovery rule's

application, so long as the plaintiff discovers or should have discovered that he was

injured."). This is also evidence of the onset of Elton William's alleged "emotional distress

injury" and thus accrual of the IIED cause of action. *Watson*, 2006 U.S. Dist. LEXIS 70869, at

*9-10. Finally, there is no evidence in the record that Williams sustained an independent or

new "emotional distress injury" upon receiving and reviewing the video discs on April 14,

2009, which would support April 14, 2009 as an alternative date of accrual. Thus, upon *de

novo* review of the issue, the Court finds that Plaintiff has not carried their burden to invoke

the discovery rule, and that the IIED claim is thus time-barred.

### G.    Fraud

The R&R recommends dismissal of the fraud claim for both failure to state a claim and

as time-barred. (ECF No. 190 at 39.) Plaintiff "declined to challenge" the R&R regarding the

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 34 of 42

fraud claim. (ECF No. 191 at 20.) Upon plain error review, the Court adopts the R&R to the extent that the Court finds the fraud claim to be time-barred.

The R&R found that Williams allegedly "knew on November 6, 2006 that Ramsey's assertions that he stole from the store were false" and thus "did not need to see the video tape in April 2009 to 'discover the operative facts of his cause of action.'" (ECF No. 190 at 38-39.) The R&R thus found that the claim is time-barred and that "Williams did not meet his burden for showing that the discovery rule applied." *Id.* at 39.

Virgin Islands courts have held that "a claim for fraud is a tort claim subject to a two-year statute of limitations." *Nguyen v. Nguyen*, No. ST-2018-CV-468, 2022 VI SUPER 1U, at *10 (V.I. Super. Ct. Jan. 4, 2022). Further, a claim for fraud accrues "only upon the discovery of the fraud or mistake." *Id.*; *see also* 5 V.I.C. § 32(c). Thus, for a fraud cause of action to have accrued within the statute of limitations for this suit commencing on March 25, 2011, the cause of action must have been discovered—and thereby accrued—by March 25, 2009.

This Court has previously analyzed the applicability of the discovery rule to Plaintiff's to IIED claim. In regards to that claim, the Court found that the TAC allegations that Williams, on January 8, 2007, was "falsely told . . . that the FBI had viewed a videotape of [Williams] stealing a television" and Williams' response of "[being] angry at being falsely accused and ask[ing] to see the alleged videotape" (ECF No. 174 at 2-3), were sufficient critical facts to put Williams on notice as to the veracity of the videotape and alert him to his need to investigate. *In re Alumina Refinery Toxic Dust Claims*, 78 V.I. at 195-96; *cf. Stephens*, 796 F.3d at 288. This analysis applies equally to Plaintiff's fraud claim. Accordingly, the Court finds

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 35 of 42

that Plaintiff has not carried his burden to invoke the discovery rule, and that the fraud claim is thus time-barred.[12]

### H.      Breach of Good Faith and Fair Dealing

The R&R recommends dismissal of the Breach of Good Faith and Fair Dealing claim for both failure to state claim in addition to being time-barred. (ECF No. 190 at 43.) Plaintiff filed objections to this finding. (ECF No. 191 at 10-13.) Upon *de novo* review, the Court rejects the R&R's finding that the Breach of Good Faith and Fair Dealing claims should be dismissed.

### *1. Statute of Limitations*

The R&R applied "a two-year tort statute of limitations" to the breach of good faith and fair dealing claim and concluded that the claim "is time-barred." (ECF No. 190 at 42.) Plaintiff objects and argues that "it is a six-year statute of limitations that applies." (ECF No. 191 at 13.) As noted previously, the statute of limitations for torts, is two years. 5 V.I.C § 31(5)(A); *see also Emanuel*, 1976 U.S. Dist. LEXIS 16125, at \*4. In contrast, the statute of limitations for cause of actions arising from a "contract or liability, express or implied," "except an action upon a sealed instrument," is six years. 5 V.I.C § 31(1)(C), (3)(A).

There is some lack of consensus on whether Virgin Islands courts interpret a "breach of good faither and fair dealing" cause of action to sound in tort or in contracts, and thus implicate either a two-year or six-year statute of limitations, respectively. *See Codrington*, 2024 U.S. App. LEXIS 17901, at \*14 ("It is unclear whether the Virgin Islands would apply a two-year or a six-year statute of limitations to a claim for breach of the implied contract of good faith and fair dealing."); *compare Guardian Ins. Co. v. Khalil*, 63 V.I. 3, 21-22 (Super. Ct.

---

[12] As such, the Court need not reach whether the claim should also be dismissed for failure to state a claim.

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 36 of 42

2012) ("Khalil's claim for breach of the duty of good faith and fair dealing arises in the insurance context and, therefore, the recovery is in tort. . . As such, the Court agrees with Guardian that a two-year statute of limitations applies."), *with Pegasus Holding Grp. Stables, LLC v. Share*, No. ST-2014-CV-69, 2020 V.I. LEXIS 83, at *12 (V.I. Super. Ct. Aug. 21, 2020) ("The nature of the breach of the covenant of good faith and fair dealing sounds in contract, and therefore the six-year statute of limitations that applies to actions in express and implied contract applies, not the two-year statute of limitations.").

This Court finds *Merchants Commercial Bank v. Oceanside Village, Inc.* instructive in determining the Virgin Islands courts' interpretation of which statute of limitations applies. 64 V.I. 3 (Super. Ct. 2015). *Merchants Commercial Banks* noted the "significant transformation" in the "common law of this jurisdiction" that occurred in 2011 with the Supreme Court of the Virgin Islands' issuance of its opinion in *Banks v. International Rental & Leasing Corp.*, 55 V.I. 967 (2011):

> In *Banks*, the Supreme Court observed that, by vesting the supreme judicial authority in the Supreme Court of the Virgin Islands, the Legislature of the Virgin Islands implicitly repealed V.I. Code Ann. tit 1 § 4.12 Because courts could no longer derive principles of common law through rote application of the Restatements of the Law as mandated by 1 V.I.C. § 4, the Supreme Court provided a framework for determining the appropriate rule of law. This framework applies to every court called upon to determine a question of Virgin Islands law, including the Supreme Court itself. [. . .] The Superior Court commits reversible error when it applies a rule of law that the Supreme Court has not established through the application of this three part test. Therefore, if the Supreme Court recites a common law proposition without first subjecting same to a *Banks* analysis, the Superior Court may not rely on that case as conclusive authority for a proposition of law.

64 V.I. 3 at 12. *Merchants Commercial Banks* found that a *Banks* analysis had not yet been conducted to define a good faith and fair dealing claim under Virgin Islands law, and thus

"previous opinions"—including case law that relied on the Restatement (Second) of Contracts for legal principals—concerning an implied covenant of good faith and fair dealing were "not dispositive." *Id.* at 15. *Merchants Commercial Bank* then conducted a *Banks* analysis and defined that "[t]he soundest rule of law for the Virgin [I]slands" is that: (1) "every contract contains an implied covenant of good faith and fair dealing"; (2) "the covenant is not understood to interpose new obligations about which the contract is silent, even if inclusion of the obligation is thought to be logical and wise"; (3) "the implied covenant recognizes that neither party will do anything which will injure the right of the other to receive the benefits of the agreement"; and (4) "a party breaches the implied covenant of good faith and fair dealing by taking actions that deprive another party of the benefits for which it had bargained." *Id.* 34-35. Thus, *Merchants Commercial Banks* supersedes any preceding case law on the implied covenant of good faith and fair dealing, including *Guardian Insurance Company v. Khalil*.[13] *Merchants Commercial Banks* adopted a six-year statute of limitations for the implied covenant of good faith and fair dealing, and subsequent cases have adhered to this statute of limitations. 64 V.I. at 16 ("Assuming the truth of these allegations, it is plausible that Plaintiff breached the implied covenant of good faith and fair dealing. Further, as an alleged breach of a contractual provision, Defendants' claim falls within the six-year limitations period."); *see also Pegasus Holding Grp. Stables*, 2020 V.I. LEXIS 83, at *12.

---

[13] Indeed, *Khalil* relied on the Restatement (Second) of Torts to define "the duty of good faith and fair dealing." 63 V.I. at 21. However, *Khalil* noted that "Khalil's claim for breach of the duty of good faith and fair dealing arises in the insurance context and, therefore, the recovery is in tort." *Id.* Cases post-*Merchants Commercial Bank* that follow *Khalil* appear to have rebranded this as "tort of bad faith of insurance companies" when imposing a two-year statute of limitations, and have noted that "no Virgin Islands court has adopted the tort of bad faith under the common law analysis provided by *Banks*." *Davies v. Certain Underwriters at Lloyds of London*, No. ST-2W 5-01-637, 2017 V.I. LEXIS 138, at n.58 (V.I. Super. Ct. Aug. 25, 2017).

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 38 of 42

Upon *de novo* review, the Court finds that a six-year statute of limitations applies to the breach of duty of good faith and fair dealing claim. *Merchants Commercial Bank*, 64 V.I. at 16. Thus, for a breach of contract cause of action to have accrued within the statute of limitations for this suit commencing on March 25, 2011, the cause of action must have accrued by March 25, 2005. As the earliest allegation in the TAC is dated November 21, 2006, no allegations within the TAC are time-barred as related to a breach of duty of good faith and fair dealing claim. (ECF No. 190 at 2.) This Court will not adopt the R&R's recommendation that the good faith and fair dealing cause of action be dismissed as time-barred.

### 2. Failure to State a Claim

The R&R found that "[w]ithout any allegation that any kind of contract is at issue, and also having failed to plead fraud," that Plaintiff failed to state a breach of good faith and fair dealing claim. (ECF No. 190 at 42.) Prior to the R&R, Plaintiff argued in his Opposition to the Motion to Dismiss that Williams had an "at-will employment agreement," and that the breach of good faith and fair dealing claim is based on the "editing and compiling surveillance videotapes to try and falsely represent that [Williams] was a thief" and for "fir[ing] him because he refused to bring back television he had never taken." (ECF No. 180 at 14.) In his Objection, Plaintiff reverses course and states that "Williams was not an at-will employee" but instead "a stock clerk whose employment was subject to the Virgin Islands Wrongful Discharge Act." (ECF No. 191 at 11.) Defendant, in turn, argued that Plaintiff failed to allege both "that a contract existed between the parties" and failed to "identify the offending 'representation.'" (ECF No. 175 at 23.)

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 39 of 42

Under Virgin Islands law, "a party breaches the implied covenant of good faith and fair dealing by taking actions that deprive another party of the benefits for which it had bargained." *Merchants Commercial Bank*, 64 V.I. at 34-35. This Court has interpreted that as requiring a plaintiff to show the following elements: "(1) a valid contract exists between the parties, (2) acts committed by the defendant amount to fraud or deceit or an unreasonable contravention of the parties' reasonable expectations under the contract[14]; and (3) that damages [were] suffered as a result." *Mamouzette v. Jerome*, Civil No. 13-0117, 2024 U.S. Dist. LEXIS 90073, at *9 n.5 (D.V.I. June 13, 2024). This "implied duty" applies to "at-will employment contracts" to the extent that it "only protects an employee's reasonable expectations stemming from the employment contract, i.e. payment earned from labor provided." *Canton v. V.I. Humanities Council*, No. ST-12-CV-279, 2017 V.I. LEXIS 116, at *24 (V.I. Super. Ct. July 26, 2017). In an at-will employment relationship, there is no "reasonable expectation of continued employment or just cause termination." *Id.* Finally, "since the implied duty is a common law principle, it does not apply to employment relationships covered by [Wrongful Discharge Act] because the V.I. Supreme Court has stated that the WDA is a statutory abrogation of the common law doctrine of at-will employment." *Id.*

---

[14] This Court acknowledges that there is some lack of clarity on whether Virgin Islands courts accept *Chapman v. Cornwall*'s statements on the implied covenant of good faith and fair dealing as good law. *Compare Canton*, 2017 V.I. LEXIS 116, at *19 (stating that "[i]n *Merchants Commercial Bank v. Oceanside Village Inc.*, this Court determined *Chapman*'s holding concerning the implied duty of good faith and fair dealing is not dispositive because the V.I. Supreme Court did not conduct a *Banks* analysis" and not requiring a showing of fraud or deceit), *with Clark v. Virgin Islands Hous. Auth.*, 2021 VI SUPER 123, at *4 n.34 (V.I. Super. Ct. Dec. 23, 2021) ("Additionally, in an at-will employment context, 'a successful claim . . . requires proof of acts amounting to fraud or deceit on the part of the employer.'" (citing *Chapman v. Cornwall*, 58 V.I. 431, 441 (V.I. 2013))); *see also* Cyril v. Carrero, Civil No. 2016-cv-0017, 2026 U.S. Dist. LEXIS 47820, at n.14 (D.V.I. Mar. 9, 2026) (contrasting the same two cases).

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 40 of 42

Because Plaintiff now claims regarding Williams' employment that "Williams was not an at-will employee" but instead "a stock clerk whose employment was subject to the Virgin Islands Wrongful Discharge Act" (ECF No. 191 at 11), Plaintiff cannot seek relief related to the termination of that employment under the tort of implied covenant of good faith and fair dealing because "the implied duty is a common law principle" and "the WDA is a statutory abrogation of the common law doctrine of at-will employment."[15] *Canton*, 2017 V.I. LEXIS 116, at *24. The Court must dismiss the claim for relief under the Virgin Islands tort of a breach of the implied covenant of good faith and fair dealing.

Accordingly, upon *de novo* review, the Court adopts the R&R's recommendation regarding the breach of good faith and fair dealing claim to the extent that the Court will dismiss this cause of action for failure to state claim.

## I.    Wrongful Discharge

Plaintiff additionally objects to the R&R on the basis that the R&R did not address "a cause of action for violation of the Virgin Islands Wrongful Discharge Act." (ECF No. 191.) Plaintiff claims that "Fed. R. Civ. P. 15 allows amendment to pleadings even after trial, and case law is clear that courts should 'freely' give leave to amend complaints when justice

---

[15] If Plaintiff had sought relief for unpaid wages as an at-will employee, a claim *may* have been sufficiently alleged. *Canton*, 2017 V.I. LEXIS 116, at *23 ("[W]hile an at-will employment agreement does not provide a worker with a guarantee of continued employment, it does provide the employee with a right to payment for labor already provided"); *see Service v. Almod Diamonds, Ltd.*, No. ST-16-CV-280, 2016 V.I. LEXIS 196 at *5 (V.I. Super. Dec. 5, 2016) ("Plaintiff pleads that she became employed by the Defendants on October 25, 2004, she was employed for more than 10 years, received various promotions, conducted trainings, and at one point was even transferred to-and-from Alaska. These facts—entitled to the assumption of truth—show it is plausible there was at least an implied employment contract between the parties. Accordingly, even in the absence of an express contract, such employment would contain the implied covenant of good faith and fair dealing."). Plaintiff also alleged that Ramsey refused to give Williams his paycheck "falsely claiming that the FBI told him to hold it as collateral," which could plausibly constitute an act of "fraud or deceit on the part of the employer." (ECF No. 174 at 3.)

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 41 of 42

requires." *Id.* Plaintiff argues that he sufficiently plead this cause of action when in the TAC, he made the conclusory statement that "[a]s a result of his wrongful discharge from Cost-U-Less [Williams] was out of work for a period of time." (ECF No. 174 at 4.) This conclusory statement is not listed among the causes of actions and is not the same as—or sufficient to—plead a claim of wrongful discharge. As Defendant correctly notes in its Response to Plaintiff's Objections, "[w]hen this Court allowed Plaintiff to amend his Second Amended Complaint in 2014, it only allowed certain limited amendments; that is, to add factual allegations relating to certain *existing* causes of action. The Court denied Plaintiff leave to amend his Second Amended Complaint in 2014 to add *new* causes of action for negligent hiring and breach of contract on the grounds that he **unduly delayed** in bringing such claims." (ECF No. 193 at 20 (emphasis in original) (citing ECF Nos. 159, 169, 173)). Accordingly, there is no wrongful discharge cause of action for this Court to consider.

## IV.    CONCLUSION

In view of the foregoing, the Court will adopt in part and reject in part, as modified herein, the Magistrate Judge's R&R. (ECF No. 190.) The Court will grant in part and deny in part Defendant Cost-U-Less' Motion to Dismiss. (ECF No. 175.) Specifically, the Court will dismiss the causes of action in the Third Amended Complaint pleading Defamation *Per Se*, Intentional Infliction of Emotion Distress, and Fraud as time-barred. The Court will dismiss the causes of action in the Third Amended Complaint pleading Abuse of Process, Breach of Good Faith and Fair Dealing, and a violation of the Virgin Islands Fair Labor Standards Act for failure to state a claim. The Court will additionally strike the Breach of Contract claim. The Court will not dismiss the cause of action pleading Malicious Prosecution. The Court will

*Williams v. Cost-U-Less, Inc.*
Case No. 1:11-cv-0025
Memorandum Opinion
Page 42 of 42

grant Plaintiff leave to file a Fourth Amended Complaint containing only his Malicious Prosecution claim and an amended Virgin Islands Fair Labor Standards Act claim—amended only to cure the deficiency identified herein regarding the number of hours worked. The Fourth Amended Complaint shall contain no new causes of action or allegations. Plaintiff shall have up to and including **April 14, 2026** to file his Fourth Amended Complaint.

An appropriate Order accompanies this Memorandum Opinion.

**Dated:** March 24, 2026                                                  */s/ Robert A. Molloy*
                                                                                **ROBERT A. MOLLOY**
                                                                                **Chief Judge**